UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH ANN HOLLAND,                            Case No. 24-cv-12296

　　　　Plaintiff,                              Hon. F. Kay Behm
v.                                             United States District Judge

FAMILY DOLLAR STORES OF
MICHIGAN, a Foreign Limited
Liability Company, and FAMILY
DOLLAR STORES OF
MICHIGAN, INC.,

　　　　Defendants.
_____ /

**OPINION AND ORDER GRANTING DEFENDANTS'**
**SECOND MOTION FOR SUMMARY JUDGMENT (ECF No. 36)**

This case is a premises liability case regarding a slip and fall at a

grocery store.  This matter is before the Court on Defendants' second

Motion for Summary Judgment (ECF No. 36).  The parties dispute

whether store employees could or should have known about spilled

bleach on the floor near the register before Plaintiff slipped.  Because no

evidence exists to suggest Defendants' employees did or should have

known about the spill in the six minutes it existed before Plaintiff's fall,

Defendants are entitled to summary judgment.

**I.　　PROCEDURAL HISTORY**

1

Plaintiff Judith Ann Holland ("Holland") filed this civil action in the Wayne County Circuit Court on or about July 30, 2024. ECF No. 1, PageID.2. On September 4, 2024, Defendants Family Dollar Stores of Michigan, LLC, and Family Dollar Stores of Michigan, Inc. (jointly "Family Dollar"), filed a notice of removal to this court based on diversity of citizenship. *Id.* On October 9, 2024, Defendants filed a pre-discovery motion for summary judgment, which the court denied. ECF Nos. 4 (motion), 15 (opinion and order). Following discovery, Defendants filed this second motion (ECF No. 36). Plaintiff responded (ECF No. 37), and Defendants filed a reply (ECF No. 38).

The parties indicated to the court that they waived oral argument, and the court finds that none is necessary to decide the issues presented. E.D. Mich. LR 7.1(f)(2).

## II.    FACTUAL BACKGROUND

This case arises from a slip and fall incident which occurred at a Family Dollar store located at 19800 Plymouth Road, Detroit, MI 48228, on September 3, 2023. ECF No. 1-2, PageID.13. Holland slipped and fell on spilled bleach inside the store near the checkout counter. *Id.*

2

She now sues based on premises liability under Michigan law.  ECF No. 1-2, PageID.15; ECF No. 10, PageID.164-65.

Some of the material facts have been undisputed from the start. The spill occurred approximately six minutes before Holland's fall, when a customer in line at the store (not Holland) dropped an item, resulting in a spillage.  ECF No. 4, PageID.65; ECF No. 10, PageID.164. Defendants provided in their original motion the security footage from the store as Exhibit B to their motion, which depicts the relevant events.  Defendants' Exhibit B to ECF No. 4, Surveillance Footage, Timestamp 14:12:51-14:19:05 [hereinafter Surveillance Footage at [timestamp]].[1]

The parties now add to the record the deposition testimony of Destiny Brown, Donna Owens, Shurhonda Legette (who also took a video of the incident after Holland fell), and Holland herself.  *See, e.g.*, ECF No. 36-4, PageID.433 (deposition of Owens, an employee, who was behind the counter at the time "counting down the register"); ECF No. 37-4, PageID.543 (deposition of Brown, also an employee, who opens the

---

[1] There are two timestamps on the video provided, which do not match.  For ease of reference, the court uses the timestamp in the upper left corner of the video. *See* Surveillance Footage (available as a media exhibit to Defendant's motion).

3

safe a few times to count money); ECF No. 36-3, PageID.423 (Brown also mopped the spill after Holland fell); ECF No. 36-5, PageID.449, 451 (deposition of Legette, a friend of Holland who took a video of Holland on the floor); Defendants' Exhibit E, Legette Video Clip [hereinafter Legette Video].  While addressed in some detail later, Brown and Owens testified that their view of that area of the floor was obstructed by customers, COVID-era barriers, and product on the shelves.  They also testified that they were not aware of the spill until Holland fell and began to yell.

## III.  STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The standard for determining

whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, when the record contains "a videotape capturing the events in question," the court may not adopt a "version of the facts for purposes of ruling on a motion for summary judgment" that "blatantly contradict[s]" the asserted version of events such that "no reasonable jury could believe it." *Raimey v. City of Niles, Ohio*, 77 F.4th 441, 447 (6th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). And the court must "nonetheless 'view any relevant gaps or uncertainties left by the videos in the light most

favorable to the Plaintiff.'" *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

Finally, the summary judgment determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53.

## IV.   ANALYSIS

### A.    *Premises Liability Under Michigan Law*

This case is before the court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and Holland's claim is based entirely on state law. The task of this court, sitting in diversity, is to apply the same law as would be applied by the Michigan state courts. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Where a state's highest court has spoken to an issue, this court is bound by that decision unless it is convinced that the high court would overrule it if confronted with facts similar to those before it. *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 205 (1956). Moreover, where a state appellate court has resolved

7

an issue to which the high court has not spoken, federal courts should "treat [those] decisions . . . as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Garrett v. Akron-Cleveland Auto Rental, Inc.*, 921 F.2d 659, 662 (6th Cir. 1990).

In a Michigan premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. *Mouzon v. Achievable Visions*, 308 Mich. App. 415, 418 (2014) (citations omitted).  On a summary judgment motion, a defendant succeeds if they prove that on any of these four elements, there are no remaining issues of material fact and they are entitled to judgment as a matter of law.

It is undisputed that Holland was an invitee.  ECF No. 4, PageID.68; ECF No. 10, PageID.173.  The duty owed to invitees is well-established; "a possessor of land owes a duty to exercise reasonable care to protect invitees from dangerous conditions on the land." *Estate of Donna Livings v. Sage's Inv. Grp., LLC*, 507 Mich. 328, 337 (2021) (citing *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 90 (1992)).

### B.    Breach

In contrast, the question of breach — "whether defendants' conduct in the particular case is below the general standard of care" — is generally a question of fact for the jury. *Rowland v. Independence Village of Oxford, LLC*, 509 Mich. 992, 992 (2022) (quoting *Clark v Dalman*, 379 Mich. 251, 260-261 (1967)).  A premises owner breaches its duty of care when it a) "knows or should know of a dangerous condition on the premises of which the invitee is unaware" and b) "fails to fix the defect, guard against the defect, or warn the invitee of the defect."  *See Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 8 (2016) (quoting *Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012)).  In other words, a plaintiff must first prove that the defendants had actual or constructive notice of the dangerous condition at issue, and then prove defendant's failure to mitigate in the face of that notice.  *Lowrey*, 500 Mich. at 8.  A defendant had constructive notice if "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it."  *Lowrey*, 500 Mich. at 11-12; *Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 983-84 (2007) ("Constructive notice may arise not only from the passage of time itself, but also from the type of condition

9

involved, or from a combination of the two elements.") (citing *Kroll v. Katz*, 374 Mich. 364, 372 (1965)). "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks*, 477 Mich. at 984 (citing *Kroll*, 374 Mich. at 371). "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Pugno v. Blue Harvest Farms LLC*, 326 Mich. App. 1, 18 (2018) (citations omitted). "[I]n response to a summary disposition motion based on an alleged lack of notice, the burden is on the plaintiff to present evidence of actual or constructive notice." *Eggerton v. Detroit Hotel Servs., LLC*, No. 360251, 2022 Mich. App. LEXIS 7209, 2022 WL 17874400, at *3 (Mich. Ct. App. Dec. 22, 2022) (citing *Lowrey*, 500 Mich. at 10); *see also Saad v. Menards, Inc.*, No. 22-cv-11833, 2024 U.S. Dist. LEXIS 58540, at *12 (E.D. Mich. Mar. 29, 2024).

Defendants move for summary judgment on the grounds that actual and constructive notice are lacking; they did not cause the spill

10

and "neither knew nor should have known about the spill in question." ECF No. 36, PageID.400.

### 1)      *Preliminary Summary Judgment Motion*

In their prior motion, Defendants argued that the six-minute timeframe at issue in this case was too short as a matter of law to establish constructive notice.  *See* ECF No. 4, PageID.70 (citing *Lowrey, 500* Mich. at 10).  While noting that six minutes is on the low end of what courts have considered to be long enough to allow constructive notice in the average slip-and-fall case, the court found that there is no strict consensus under Michigan law that six minutes is too short as a matter of law, and that the character and nature of the defect was at that stage still a relevant factual issue in need of development.  *See Holland v. Fam. Dollar Stores of Michigan*, No. 24-CV-12296, 2024 WL 5059152, at *5-6 (E.D. Mich. Dec. 10, 2024).  That analysis is not repeated in depth here, but several salient points are helpful to recount. For example, how obvious the danger was to a reasonable observer on "casual inspection" changes the calculus of how long it is reasonable to not notice its existence.  *Kandil-Elsayed v. F & E Oil, Inc.*, 512 Mich. 95, 153 (2023).  On the silent video available on the earlier motion, it was hard to tell how visible the spill was to an employee working at the

counter, how obvious it was to people in line or to the employees, and without sound, it was unclear whether there was any audible indication that should have put an employee on notice of a spill or other unusual event.  For that matter, it was not clear whether any customer told any employee that something had spilled.

The court pointed out that it would favor Defendants if it turned out that "the spill was . . . blocked from the Family Dollar employees' vision, [or] was perhaps not immediately obvious[.]" *Holland*, 2024 WL 5059152, at *6.  The reason that is so is because the court has seen no evidence (nor authority for the proposition) that Defendants are required to have their employees on five-minute rotations to check for spills; the point here thus was simply whether an employee in fact could have and should have seen the spill feet away from them.  If their view was obscured, then the employees could not have seen it and, without other facts in play, they could not be expected to know about the defect in the limited time at issue.  But it would favor Plaintiff if it turned out that "the employees' line of sight include[d]" the spill and it therefore "may have been fairly obvious at a glance had they looked in that direction, even if they did not actually see it in fact." *Id.*  If the spill

were in their field of vision and obvious to a reasonable observer, that would likely raise a jury question of whether it was reasonable for employees not to notice it.[2]

Finally, the court also pointed out that the silent surveillance video did not conclusively resolve whether any employee had actual notice of the spill; when the item falls (Surveillance Footage at 14:13:03), the cashier working the main checkout line is looking over in the same direction as the accident. And without audio, there was no conclusive evidence whether any customers informed any employees about the spill (in the checkout line, several customers who were close to the spill spoke with the cashier). *See generally* Surveillance Footage. So it became both parties' burden to present affidavits, testimony, or other evidence to resolve the ambiguities presented by the video as to

---

[2] Although not an important point of contention, it was also not clear exactly which of two possible spills caused Holland's fall; which spill caused her fall would be relevant because of the character and obviousness of that particular spill to observers. *Id.*; *see* Surveillance Footage at 14:13:03-11 (customer wearing red drops two different items). At this point, and with the benefit of review of the Legette video, the first of those items appears to have caused the spill at issue. After it falls and rolls away, a line of splotches appears on the floor along the path it rolled. *See id.* at 14:14:00-14:14:40. That line of splotches (visible at times in the Surveillance Video) lines up with the spill clearly visible in the phone video provided. *See* Legette Video.

actual notice as well as constructive notice. *See Holland*, 2024 WL 5059152, at *7.

In summary, the factual issues the court identified as to actual or constructive notice were: a) whether the spill was visible to or in the field of vision of any employee; and b) whether there were any other cues that did or should have put a nearby employee on notice of a spill.

### 2) *Current Summary Judgment Motion*

In Defendants' summation, the undisputed facts now show that:

- The liquid that Plaintiff slipped on was spilled by another customer who was in line with an arm full of items (i.e. not an employee).

- The customer that dropped the bottle did not report the spill to the cashiers/employees of Family Dollar.

- No other customer in line reported the spill to the employees of Family Dollar.

- The employees did not become aware of the spill until after they heard the Plaintiff yelling.

*See* ECF No. 36, PageID.400.

Plaintiff does not meaningfully dispute any of these points; her response rests mainly on the idea that Defendants had a duty to inspect the area within the six-minute timeframe available. The court walks through its prior points and Defendants' arguments for clarity, and then addresses Plaintiff's argument.

14

*Whether there were any cues that should have put a nearby employee on notice of a spill.*  Both Owens and Brown testified that the employees did not become aware of the spill until after they heard the Plaintiff yelling.  *E.g.* ECF No. 36-4, PageID.441.  Brown testified that she "didn't hear anything fall." *Id.* at PageID.442.  The customer who dropped the bleach did not tell the cashiers that the bleach had been spilled.  No other customer in line reported the spill to the employees of Family Dollar.  ECF No. 36-3, PageID.429 (Brown); ECF No. 36-4, PageID.435 (Owens: "nobody informed any of us that the spill was down there").  Plaintiff does not contest that testimony with any controverting evidence nor introduce any other theories of actual notice, and so it is not genuinely disputed that Defendants lacked actual notice.  *See* ECF No. 37, PageID.471; *see also id.* at PageID.469 (albeit mainly referring to Holland: "the hazard remained undetected").  Plaintiff also does not set forward any facts that indicate that employees heard or should have heard any particular noise or been aware of some other cue.  There is, therefore, no genuine dispute between the parties that any cue other than the visual character of the

15

spill (and the length of time it was there) should have put Defendants on constructive notice of the spill.[3]

*Whether the spill was visible to or in the field of vision of any employee.* The evidence indicates that employees were not able to see the spill from their vantage points during the six-minute window, and no controverting evidence exists. Owens testified that she could not see much of the floor from where she was, both due to the number of customers and a COVID-era barrier in front of the counter. ECF No. 36-4, PageID.436. Brown too referred to the barrier between cashiers and customers. ECF No. 36-3, PageID.419. She estimated that she had 50% obstructed field of vision at the counter between the effect of

---

[3] In the light most favorable to Plaintiff (and reading her brief somewhat liberally), she seemed to raise the question of whether the odor of the bleach might be enough to put the employees on notice that it had spilled. ECF No. 37, PageID.469 ("Shurhonda Legette corroborated that the odor of bleach was strong . . . .") (citing Legette Dep., ECF No. 37-3, PageID.525 ("it smelled nothing but bleach")). But Holland herself describes it as something she only noticed once on the ground; if Plaintiff could only smell the odor after falling, then she cannot credibly press the argument that it should have been detected by an employee further away and behind a barrier. *See* ECF No. 37, PageID.473 (she "only noticed a chemical odor once she was on the ground") (citing Holland Dep., ECF No. 37-2, PageID.492). And more importantly, Plaintiff does not press that potential basis for finding constructive notice in her briefing. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("It is not the district court's . . . duty to search through the record to develop a party's claims[.]").

customers, the barrier, and shelved product in view.  ECF No. 37-4, PageID.546.[4]

Earlier, the court pointed out that "when the first item falls (Surveillance Footage at 14:13:03), the cashier working the main checkout line is looking over in the same direction as the accident[,]" and so wondered whether that third cashier might have seen something.  *See Holland*, 2024 WL 5059152, at \*7.  But Plaintiff does not raise any argument in her response suggesting that this person is relevant to her claim, forfeiting the point.  In any event, the now-uncontroverted testimony of Brown and Owens is sufficient to prove that third cashier could not have seen the spill.[5]  Plaintiff had the opportunity to depose the last cashier to get a different version of

---

[4] Brown left the cashier/counter area for a little bit after the spill occurred, and during that time is not visible in the surveillance footage.  ECF No. 37-4, PageID.544; *see* Surveillance Footage at 14:13:22-:40.  That is ultimately unimportant because she testified that she did not know about the spill before cleaning it and no controverting evidence exists.

[5] Brown's testimony indicated that the cashier at the first register (the one referred to by the court as the third and un-deposed cashier) would not have been able to see the spill: "Not [with] the customers in the line, not really.  You have the candy right there, you can't really see it unless you're down by register three."  *See* ECF No. 37-4, PageID.544.  So under Brown's testimony, only a cashier at the third register might have a clear view of that area of floor, but it was Owens who was by register three at the time of the spill (ECF No. 37-5, PageID.568), and Owens testified that "the line was super long and crowded, so I couldn't really see the floor in front of me, or really too much of the floor."  *Id.* at PageID.569.

events, but did not do so.  And "[t]he burden of presenting evidence of notice regarding dangerous conditions always rests with the plaintiff." *Duboise v. Wal-Mart Stores, Inc.*, No. 17-1454, 2018 U.S. App. LEXIS 7772, 2018 WL 1940412, at *2 (6th Cir. Mar. 27, 2018) (citing *Clark v. Kmart Corp.*, 465 Mich. 416, 634 N.W.2d 347, 349 (Mich. 2001) (per curiam)).  Any speculation that a factfinder might engage in while watching the video regarding what that last cashier saw must remain just that – and mere speculation about what she saw would not be enough for a reasonable jury to find that Plaintiff met her burden of proof by the preponderance of the evidence.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-53 (1986); *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("the non-moving party must be able to show sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation[ or] conjecture[]") (citation omitted, cleaned up).

Plaintiff also spends a fair portion of her brief arguing that the spill was not open and obvious because the bleach was a clear liquid. ECF No. 37, PageID.472, 474 ("The hazard blended seamlessly with the surface").  Plaintiff emphasizes that she herself did not see the liquid on

18

the floor.  *Id.* at PageID.473 (citing Holland Dep. 62:2-63:11)).  This argument, however, merely cuts against her case; if the liquid was clear, then it was even *less* likely to be seen by an employee at the register with customers in the way, and it is *less* reasonable to expect them to know about a spill that they could not see.  *See Kandil-Elsayed v. F & E Oil, Inc.*, 512 Mich. 95, 153 (2023) ("whether it is reasonable to expect that an average person . . . would have discovered it upon causal inspection, remains relevant, [as] a question of breach and comparative fault.").  The spill's opacity does not matter here, where no evidence suggests it was in an employee's field of vision at all, but its significance to Plaintiff's argument merited an explanation.[6]

For all of the testimony available on these issues, Plaintiff actually admits most of the relevant points here, noting that "Destiny Brown admitted her visibility was only five out of ten from behind the counter, and Donna Owens said the counter setup and crowding blocked

---

[6] With that said, Plaintiff's argument that the bleach was clear and nonobvious is somewhat odd; the liquid appears to be fairly visible in both of the videos provided, and Legette testified that it was visible.  *See* ECF No. 36-5, PageID.448 ("You could see the bleach."); *but see* ECF No. 36-6, PageID.455, 458 (Holland "[c]ouldn't see the floor was wet" and claimed she would not have seen it even had she been paying attention).  Again, that dispute does not matter if the employees had no line of sight at all.  And maybe more to the point, Plaintiff has likely forfeited the argument that the spill would have been obvious to an employee at a glance by arguing the opposite.

her view." ECF No. 37, PageID.477. Plaintiff thus takes the somewhat confusing position that because no staff knew about the spill, this shows their failure to meet their duty of reasonable care. From the fact that no staff knew about the spill, Plaintiff deduces that "the spill was there, the staff could have found it, and no one did." *Id.* But whether it was theoretically possible for staff to discover the spill is not the standard for liability; the standard is whether it was unreasonable for staff not to have found the spill during the time that was actually available to them. If Plaintiff admits that the staff's visibility was poor and they lacked the ability to see the spill from where they were, then Plaintiff rests her entire case on the claim that staff had a duty to leave what they were doing and inspect the floor for a spill within the six-minute gap between the spill and her fall. *See* ECF No. 37, PageID.471 ("Family Dollar's own procedures required staff to monitor customer areas continuously"). So the court concludes by addressing that argument.

*Duty to inspect.* Plaintiff's arguments that the standard of reasonable care is to "monitor customer areas continuously" are not convincing. She says this five-minute gap in floor inspections "reflects a

complete absence of situational awareness in an area known for spills."

ECF No. 37, PageID.471.  But she presents no evidence that such

frequent inspection is standard practice in grocery stores, or in Family

Dollar, or in this particular store.  *See Moning v. Alfono*, 400 Mich. 425,

457 (1977) ("The customary usage and practice of the industry is

relevant evidence to be used in determining whether or not [the]

standard of reasonably prudent conduct has been met"); *e.g West v.*

*Target Corp.*, No. 2:19-CV-13183, 2021 WL 2682833, 2021 LX 68913, at

*7 (E.D. Mich. June 30, 2021) (considering an expert report

"describ[ing] common practices in the retail industry").  Her alleged

duty to "continuously" inspect the floors does not engage with the facts

showing that employees were not available to inspect the floors at that

moment.[7]  Brown admitted that the employees could have seen the spill

if they "walked around from the register and looked[,]" but they did not

---

[7] Plaintiff's reference to the alleged policy of monitoring the floors "continuously" refers to (as best the court can tell) Brown's testimony.  *See* ECF No. 37, PageID.471.  But Brown's testimony did not use the word "continuously;" she said that employees were expected to "walk around and make sure the aisles were safe" "whenever they can, whenever they're not busy."  *See* ECF No. 37-4, PageID.543.  And Owens and Brown testified that they were at that time busy with tasks at that time that required their attention.  *See* ECF No. 36-3, PageID.426-27; ECF No. 36-4, PageID.433 (Owens was counting money at the time and could not leave where she was).

do that because "because it was in the middle of shift change and we were dropping money and doing other things[.]"  ECF No. 36-3, PageID.426-27.  Nor does Plaintiff engage with any case law regarding reasonable inspection efforts or what amount of time between inspections might present a factual question of reasonableness. *Compare, e.g.*, *Rippy v. Home Depot U.S.A., Inc.*, No. 09-CV-12043, 2010 WL 891154, 2010 U.S. Dist. LEXIS 21756, at *13-14 (E.D. Mich. Mar. 10, 2010) (evidence of regular inspections throughout the day, combined with a lack of evidence that the dangerous condition existed for a "sufficient" length of time, resulted in summary judgment for defendant), *with Berger v. Target Corp.*, No. 20-10112, 2021 WL 1894838, 2021 U.S. Dist. LEXIS 89239, at *22 (E.D. Mich. May 11, 2021) (finding question of fact regarding constructive notice and the length of time an oil spill was on the floor when no employee was visible on security footage for 21 minutes prior to plaintiff's fall).[8]  Instead, it is

---

[8] To be sure, Defendants do have a duty to inspect for spills.  *Albitus v. Greektown Casino, LLC*, 339 Mich. App. 557, 563 (2021) ("the duty of premises owners to inspect for dangers on behalf of invitees is a longstanding principle of Michigan law").  And speaking at a high level of generality, the reasonableness of the frequency of inspections is probably a factual question.  *See Megge v. Lumbermens Mut. Cas. Co.*, 45 Mich. App. 119, 122 (1973) (finding the frequency of inspections (every 30 days), their character, and the employer's reliance on them

Defendants who have come forward with evidence of reasonable inspection practices. The general (if apparently informal) protocol was for employees to walk around the store when entering the building for their shift to check for spills. *See* ECF No. 37-4, PageID.543. Employees also walk around to check the store when they are not busy. *Id.* That happened approximately every hour. *Id.* Absent any controverting evidence or authority, no reasonable jury could conclude that this protocol was unreasonable or that Defendants were required to send their employees out in five-minute intervals to inspect the floors to maintain the property in reasonably safe condition. *See Promo v. Dayton Hudson Corp.*, No. 95-2398, 1997 U.S. App. LEXIS 10639, at *7 (6th Cir. May 6, 1997) (Defendants "do not have a duty to inspect the store through binoculars or to scour the aisles from their hands and knees in hopes of finding a hidden danger."); *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 90 (1992) (the duty is to "maintain [the] property in a reasonably safe condition").

---

factual issues for jury resolution). But Plaintiff makes no effort to seriously apply that general principle of the duty to inspect to the six minutes at issue here.

23

One particular Michigan Supreme Court case is instructive. Within a similarly short period of possible notice at issue, the Court found there to be a question of fact whether a gas station attendant should have known about a defective gas pump before the nozzle broke off and sprayed a customer – despite the defect existing for eight minutes at most – because there had been a one-cent sale on that nozzle five minutes before the accident. *See Banks v. Exxon Mobil Corp.*, 477 Mich. 983, 984 (2007). In so finding, the Court reversed the Michigan Court of Appeals' opinion that the one-cent sale "was not sufficient to provide notice that there was something immediately wrong with the pump that required immediate action." *See Banks*, No. 257902, 2006 WL 657096, at *2 (Mich. Ct. App. Mar. 16, 2006) (finding no question of constructive notice when "[t]he one-cent sale occurred less than five minutes before plaintiff used the pump"), *rev'd in part*, 477 Mich. 983 (2007) ("a reasonable jury could conclude based on the facts presented to the trial court that the defendants should have discovered the defect"). This court reads the Court's reversal in *Banks* to stand for the proposition that as long as there is some sufficient cue or indication of a defect that an employee was or should have been aware of, then even

within a very short time that cue can be enough for a reasonable jury to find that the employee should have known about or investigated the defect. But here, Plaintiff has produced no evidence of any similar action or cue that could have alerted staff to the spill on the floor until the moment Holland fell. Absent evidence of such a cue, the spilled bleach did not "exist[] for a sufficient period of time for defendant to have known of its existence." *See Clark*, 465 Mich. at 421.

Summary judgment is therefore appropriate because no reasonable jury could find Defendants were on constructive notice of the spill on these facts. The spilled bleach was only on the floor for six minutes, all evidence indicates that it was blocked from employees' view, and no employee could have known about it during that time unless they had moved out from behind the counter. But it did not breach the duty of reasonable care to remain where they were; given the short time period and lack of any cue alerting employees to the problem, no reasonable "jury could infer that defendant should have discovered and rectified the condition." *Compare Clark v. Kmart Corp.*, 465 Mich. 416, 420 (2001) (finding question of fact on notice when grapes were on the floor of a checkout lane for an hour).

25

Two final points warrant addressing.  First, Plaintiff's arguments in her response brief that the spill had dangerous "special aspects" do not change this conclusion.  ECF No. 37, PageID.474-75.[9]  The level of danger posed by the spilled bleach to customers is nonresponsive to the issue presented in Defendant's motion – whether Defendants' employees did or should have known about the spill in the six minutes available to them.

Second, Defendant presented the report of Steven Arndt, allegedly an expert in "human factors," who opined after review of the surveillance video that the "environmental, situational, and contextual cues" as well as "ambient lighting" in the store made it such that a reasonably alert customer would not have fallen, and that the employees' line of sight was limited such that the spill would not have been detectable or visible.  ECF No. 36-7, PageID.461-62.  Without

---

[9] Plaintiff is referring to *Lugo v. Ameritech Corp.*, 464 Mich. 512 (2001), which held that "the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id.* at 517.  But that strict rule statement was overruled in *Kandil-Elsayed v. F & E Oil, Inc.*, 512 Mich. 95 (2023), which made those issues a factual question of comparative fault, better suited for a jury in the run of cases. *See id.* at 144 (holding that "the open and obvious nature of a danger . . . is relevant to the defendant's breach and the plaintiff's comparative fault.")

ruling on Dr. Arndt's ability to reliably opine on those matters (*see* Fed. R. Evid 702), a jury could simply choose not to credit his opinion. So for purposes of resolving all disputed facts in the light most favorable to Plaintiff, the court does not and did not give any weight to his report in resolving this motion.

## V.   CONCLUSION

Because no reasonable jury could find that Defendants' employees knew or should have known about the spill in question, Defendants' motion for summary judgment is **GRANTED**.

An order of judgment will follow.

**SO ORDERED**.

Date: February 4, 2026                s/F. Kay Behm
                                      F. Kay Behm
                                      United States District Judge